OPINION
{¶ 1} Plaintiff-appellant George Deeslie appeals from the December 5, 2003, April 1, 2004, and April 8, 2004, Judgment Entries of the Licking County Court of Common Pleas, Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant George Deeslie and appellee Michele Deeslie [hereinafter "appellee"] were married on October 11, 1996. Two children were born as issue of such marriage, namely, Austin (DOB 11/28/93) and Krizma (DOB 8/28/96).
 {¶ 3} On July 13, 2000, appellant filed a complaint for divorce against appellee. Pursuant to a Judgment Decree of Divorce filed on August 7, 2001, the parties were granted a divorce. Pursuant to the terms of the Decree, appellant was granted custody of the two minor children and was designated residential parent. Appellee was granted visitation with the children in accordance with Local Rule 19 and during additional specified times and was granted five weeks of summer visitation. In addition, appellees Ben and Sandra Davis (hereinafter "the Davis appellees"), who are the children's grandparents and appellee Michele Deeslie's parents, were granted visitation one Sunday per month and "one week of exclusive vacation time with the children every summer."[1]
 {¶ 4} Subsequently, on October 15, 2002, appellant filed a motion for modification of allocation of parental rights and responsibilities. Appellant, in his motion, alleged, in relevant part, as follows:
 {¶ 5} "A change of circumstances has occurred with regard to the nonresidential parent, because the Defendant [appellee] has apparently lost the ability to exercise visitation with the children without the assistance of her parents, the Third Party Defendants [the Davis appellees]. In the past few months, the Third Party Defendants [the Davis appellees] have provided all transportation with regard to visitation, and upon returning from their scheduled visitation with Defendant [appellee], the children have indicated that they are visiting the Defendant [appellee] in an environment which has the likeness of a hospital, and they are spending most of their visitation time solely with the Third Party Defendants [the Davis appellees]. Based upon Defendant's [appellee's] past history of extended substance abuse problems, the Plaintiff [appellant] believes that Defendant [appellee] has been involved with inpatient counseling, and based upon the reports of the children, the Plaintiff [appellant] desires that this court make an investigation into whether or not the Defendant [appellee] should have visitation with the children either with or without supervision."
 {¶ 6} On the same date, appellant filed a motion requesting a court investigation into appellee's "current status and ability to exercise parenting time with the minor children without the need for supervision." An ex parte order granting the motion for court investigation was filed on October 15, 2002.
 {¶ 7} A hearing was scheduled for February 3, 2003, on appellant's motion for modification of allocation of parental rights and responsibilities. As memorialized in a Magistrate's Order filed on February 25, 2003, the Magistrate continued such hearing until May 15, 2003, so that the Davis appellees could secure counsel. The Magistrate, in his decision, ordered that "[a]ll parenting time that the defendant [appellee] has, until further order of this court, shall be under the direct supervision" of at least one of the Davis appellees. In a separate Magistrate's Order filed on the same day, the Magistrate appointed a guardian to represent appellee in this matter due to concerns over appellee's competency.
 {¶ 8} Thereafter, on May 8, 2003, the Davis appellees filed a motion seeking visitation with their grandchildren in accordance with Rule 19 plus alternate Fridays. The Davis appellees, in their motion, noted that appellee, their daughter, was not always able to exercise her visitation with the children due to mental health issues and that appellant would not permit them to visit the children without appellee actually being present. The Davis appellees specifically requested that, due to their strong relationship with their grandchildren and the grandchildrens' strong relationship with their halfbrother, who lives with the Davis appellees, they be awarded visitation with or without appellee's presence.
 {¶ 9} A hearing before the Magistrate was held on May 15, 2003. The Magistrate, in an Order filed on May 21, 2003, noted that appellee was incarcerated at the time of the hearing on a DUI charge and that "[a]ny future contact [with her children] will be with great structure." The Magistrate, in his decision, further granted the Davis appellees visitation every other weekend and four non-consecutive weeks in the summer of 2003 and ordered that appellee "shall have as much or little contact with these children during [the Davis appellees'] contact time but she shall have no time, at least at present, that is exclusively hers." The Magistrate, in his decision, further indicated that his order was an interim order and that a final Magistrate's decision would be issued after the children were interviewed.
 {¶ 10} A final Magistrate's Decision was filed on June 5, 2003. The Magistrate, in such decision, after indicating that he had considered the factors contained in R.C. 3109.051(D)(1)-(12), recommended that the Davis appellees be granted visitation time with their grandchildren on alternating weekends, irrespective of whether appellee was present or not, and alternate holidays. The Magistrate further recommended that the Davis appellees be granted visitation with their grandchildren four non-consecutive weeks during the summer. The Magistrate, in his decision, stated, in relevant part, as follows:
 {¶ 11} "As stated in the Magistrate's Order filed May 21, 2003, the Magistrate finds, to a certain degree, anyway, because of the actions of the defendant, the third party defendants' have entered these children's lives significantly enough to be afforded companionship on their own merits. . . .
 {¶ 12} "In addition, the Magistrate finds that these third party defendants fulfill a need for contact with the maternal side of the children's lives. The mother certainly cannot be counted upon to be involved with the children in a appropriate way on an ongoing basis. She has her own issues . . ." The Magistrate further set out that any of appellee's parenting times would have to be under the direct supervision of the maternal grandparents.
 {¶ 13} Appellant filed objections to the Magistrate's Decision on July 15, 2003. Appellant, in his objections, argued that the Magistrate's Decision was not consistent with the decision of the United States Supreme Court in Troxel v.Granville (2000), 530 U.S. 57, 120 S.Ct. 2054 because it gave "no indication that it gives weight and consideration to the wishes" of appellant, who appellant noted was indisputably a fit parent. Appellant further argued that the Magistrate's Decision was inconsistent with the parenting decisions expressed by appellant and provided for excessive grandparent visitation, especially during the summer months.
 {¶ 14} On July 22, 2003, the Davis appellees filed a motion for contempt, arguing that appellant should be found in contempt for violating the Magistrate's Order of May 21, 2003, by denying them visitation. The Davis appellees, in their motion, specifically requested that the trial court approve their attached visitation schedule for the summer of 2003.
 {¶ 15} In an Opinion filed on November 10, 2003, the trial court overruled appellant's June 15, 2003, objections. The trial court, in its Opinion, stated, in relevant part, as follows:
 {¶ 16} "The Court finds in reviewing the times the children are designated to be with the maternal grandparents are geared more toward facilitating an unfettered opportunity for the defendant [appellee] to exercise parenting times with her children than creating independent visitation times for the maternal grandparents.
 {¶ 17} "Consequently, the Court determines from the Magistrate's Decision and Magistrate's Order that Troxel is not applicable to this case. The essence of the Magistrate's determination was to give the defendant [appellee] anopportunity to maintain regular and consistent contact with her children despite her susceptibility to revert to various illicit acts.
 {¶ 18} "The maternal grandparents' times with the children are primarily a vehicle to achieve those efforts until the defendant is in an acceptable condition to have parenting times without supervision. The fact that the maternal grandparents are able to spend time with the children as well is a collateral benefit."
 {¶ 19} The trial court, in its Opinion, further ordered counsel for the Davis appellees to prepare a judgment entry consistent with the Magistrate's Decision. Thereafter, a Judgment Entry was filed on December 5, 2003, incorporating the Magistrate's June 5, 2003, Decision. The trial court, in such entry, granted the Davis appellees visitation time with their grandchildren on alternating weekends and alternate holidays and for four non-consecutive weeks during the summer, regardless of whether appellee was present or not.
 {¶ 20} On January 6, 2004, appellant filed a motion to dismiss the July 22, 2003, motion for contempt filed by the Davis appellees, arguing that the Magistrate's Decision was stayed by the filing of the objections to such decisions pursuant to Civ. R. 53.
 {¶ 21} Subsequently, a hearing before the Magistrate was held on January 8, 2004. As memorialized in a Magistrate's Decision filed on January 21, 2004, the Magistrate recommended that appellant's motion to dismiss be overruled, finding that since appellant had not filed objections to the Magistrate's May 21, 2003, Order, the same was valid. The Magistrate further recommended that the Davis appellees' motion for contempt be overruled. While the Magistrate indicated that if he "were to allocate fault for the problems that arose in the summer of 2003, he would put it on appellant", he further noted that "the failure of contempt is because it was not specifically stated that the Davis appellees would pick the times for visitation."
 {¶ 22} Appellant filed an objection to the Magistrate's January 21, 2004, Decision on February 3, 2004, arguing that the Magistrate erred in making orders regarding any matter other than with respect to the contempt motion and in ordering appellant to pay any of the costs associated with the hearing on the same. Appellant specifically argued that since the hearing was restricted to the contempt motion, the Magistrate should not have made any orders regarding visitation.
 {¶ 23} Thereafter, on March 10, 2004, the Davis appellees filed a motion for an interim order, asking the trial court to establish a framework by which the parties were to conduct visitation. The Davis appellees specifically requested guidance as to how they were to notify appellant in advance of their requested summer visitation times for the summer of 2004. After appellant filed a memorandum in opposition to such motion, the trial court, pursuant to an interim order filed on March 22, 2004, ordered that "[t]he visitation/parenting times for the Grandparents shall be governed by the framework provided in Local Rule 19 as to times, notices, pick-ups and drop-offs, when no existing order herein is determinative of the issue at hand."
 {¶ 24} As memorialized in an Opinion filed on March 25, 2004, the trial court overruled appellant's February 3, 2004, objection to the Magistrate's Decision. The trial court, in its Opinion, noted that the court had power to clarify its previous orders to prevent further problems. The trial court journalized its Opinion in a Judgment Entry filed on April 1, 2004.
 {¶ 25} On April 8, 2004, the Davis appellees filed a motion for approval of their attached summer visitation schedule for the summer of 2004. The same day, before appellant had a chance to respond, the trial court entered a judgment approving the summer visitation schedule.
 {¶ 26} It is from the December 5, 2003, Judgment Entry that appellant now appeals, raising the following assignments of error in Case No. 03CA00114:
 {¶ 27} "I. Ohio Revised Code Section 3109.051 is unconstitutional in that it fails to require a trial court to afford the decision of a fit parent special weight as is required by Troxel v. Granville (2000), 530 U.S.57, 120 S.CT. 2054,147 L.Ed.2d 49.
 {¶ 28} "II. The trial court erred by failing to afford the appellant's decision special weight with regard to visitation with the grandparents.
 {¶ 29} "III. The trial court erred in its finding that Troxel v. Granville (2000), 530 U.S.57, 120 S.CT. 2054, 147 L.Ed.2d 49, did not apply to the case at bar."
 {¶ 30} In turn, it is from the April 1, 2004, and April 8, 2004, Judgment Entries that appellant raise the following assignments of error on appeal in Case No. 04CA0035:
 {¶ 31} "A. The trial court erred in issuing orders on matters not currently pending before the court, without holding a hearing on said matters and thus not affording the appellant's wishes special weight as required under Troxel v. Granville (2000), 530 U.S.57, 120 S.CT. 2054, 147 L.Ed.2d 49.
 {¶ 32} "B. The trial court erred in ordering the appellant to pay court costs for the hearing on the motion for contempt brought by the appellees and denied by the trial court.
 {¶ 33} "C. The trial court erred in granting appellees' motion for approval of summer visitation without first holding a hearing or allowing the appellant any opportunity to respond to said motion, thus not affording appellant's wishes special weight as required under Troxel v. Granville (2000), 530 U.S.57,120 S.CT. 2054, 147 L.Ed.2d 49.
 {¶ 34} "D. The granting of the appellees' motion for approval of summer visitation by the lower court without a full hearng or any opportunity to respond by the appellant was a denial of the appellant's due process rights as guaranteed by the constitutions of the United States and the state of Ohio."
 {¶ 35} For purposes of judicial economy, we shall address the assignments of error out of sequence.
 ASSIGNMENTS OF ERROR CASE 03 CA 00114 III {¶ 36} Appellant, in his third assignment of error, argues that the trial court erred in holding that Troxel v. Granville
(2000), 530 U.S. 57, 120 S.Ct. 2054 did not apply to the case sub judice. We agree.
 {¶ 37} As an initial matter, we note that the trial court, in the case sub judice, found that Troxel was not applicable because "the times the children are designated to be with the maternal grandparents are geared more toward facilitating an unfettered opportunity for the defendant [appellee] to exercise parenting times with her children than creating independent visitation times for the maternal grandparents." We, however, disagree with such reasoning since the Davis appellees, who are the maternal grandparents, were granted their own independent visitation with the children.
 {¶ 38} In the case sub judice, appellee argues that Troxel,
supra. is not applicable because at issue is a motion for modification of grandparent visitation, rather than an initial request for visitation, and because in the cases applyingTroxel, there is an absent, non-participating or deceased second parent whereas appellee "is an active participant in visitation despite her struggles to control her bi-polar disorder." However, we disagree.
 {¶ 39} In Troxel, supra, the United States Supreme Court reviewed an action arising out of Washington State's Revised Code Section 26.10.160(3), which permits any person to petition for visitation rights at any time, and authorizes the State Superior Courts to grant visitation rights whenever visitation may serve a child's best interest.
 {¶ 40} In the Troxel case, Jennifer and Gary Troxel petitioned a Washington Supreme Court for the right to visit their grandchildren, Isabelle and Natalie Troxel. Jennifer and Gary Troxel were the parents of Brad Troxel, the natural father of Isabelle and Natalie. Troxel and the girls' mother never married, but Brad Troxel lived with his parents and regularly brought his daughters for visitations. After Brad Troxel died in May, 1993, the grandparents continued to see the girls on a regular basis. However, in October of 1993, the girls' mother indicated she wished to curtail their visitation with her daughters to one short visit per month. In response, the grandparents filed a petition in the Washington Superior Court to obtain visitation rights, and the Superior Court entered a visitation decree ordering visitation one weekend per month, one week during the summer, and four hours on both of the petitioning grandparents' birthdays.
 {¶ 41} The girls' mother appealed, and the Washington State Supreme Court found the grandparents could not obtain visitation of Isabelle and Natalie pursuant to Section 26.10.160(3), because the Washington statute unconstitutionally infringed upon the fundamental rights of the parents to raise their children. The Washington State Supreme Court found two problems with the non-parent visitation statute. First, the State is permitted to interfere with the rights of the parents to rear their children as they choose only when such interference is necessary to prevent harm to a child. The Supreme Court noted that the visitation statute failed to require any threshold showing of harm. The Washington State Supreme Court also found the visitation statute to be overly broad since it permitted any person to petition for visitation at any time, only upon a showing of the best interest of the child. The Washington State Supreme Court found that parents have a right to limit visitation of their children with third persons and that, as between parents and judges, the parents should be the ones to decide whether their children should be exposed to certain people or ideas.
 {¶ 42} Upon review, the United States Supreme Court found that the Washington statute was overbroad, and infringed on the parent's fundamental right to make decisions concerning care, custody, and control of children. First, the court found there is ordinarily no reason for the State to interject itself into the private realm of the family "so long as a parent adequately cares for his or her children (i.e. is fit) . . ." Id. at 68. The court noted that the problem, however, was not that the Washington Superior Court intervened, but rather that it gave no special weight to the mother's right to determine her daughters' best interests. Instead, the Superior Court appeared to have applied the opposite presumption, namely favoring non-parent visitation. In other words, the Washington Superior Court placed upon the mother, who was the fit custodial parent, the burden ofdisproving that visitation would be in her daughters' best interest.
 {¶ 43} The United States Supreme Court also took issue with the trial court's approach to visitation. The United States Supreme Court found where the case involves nothing more than a disagreement between the court and the parent concerning the child's best interest, the parent had a fundamental right to make decisions regarding his or her children. The Supreme Court noted that there is a constitutional dimension to the right of parents to direct the upbringing of their children, and that it is cardinal that the custody, care and nurture of the child rest first in the parents. Troxel at 65-66, citations deleted.
 {¶ 44} In reviewing the facts of the Troxel case, the United States Supreme Court found that there was no allegation or finding that the children's mother was unfit. The Supreme Court found this aspect to be important, because there exists a presumption that fit parents act in the best interest of their children. The Court further found that the Washington Superior Court had failed to afford the determination of the girls' mother, a fit custodial parent, any material weight. In short,Troxel indicates that in the absence of an allegation of parental unfitness, the presumption that fit custodial parents act in the best interests of their children must be applied, and the parents' determination of their child's best interest must be afforded special weight.
 {¶ 45} There is no reason why Troxel is not applicable to the case sub judice. There is no evidence that appellant is not a fit parent. As a fit parent, appellant, therefore, is presumed to act in the best interest of his children. In Vitcusky v.Vitcusky, Richland App. No. 2002CA083, 2003-Ohio-5486, as part of the divorce decree, the grandparents were granted specific visitation privileges with the minor grandchildren. The grandparents later filed a motion to modify companionship, asserting a change of circumstances. The trial court, after a hearing, modified the grandparents' visitation and the childrens' father appealed, arguing that the trial court erred in holding that it was in the childrens' best interest to modify the visitation privileges and that the trial court failed to give special weight to his wishes as the custodial parent pursuant toTroxel, supra.
 {¶ 46} This Court, in affirming the decision of the trial court, noted, in part, that it was apparent from the record that the trial court had afforded due deference to the father's wishes. Thus, in Vitcusky, this Court implicitly recognized that Troxel applies in cases such as the case sub judice where grandparents, who are granted visitation pursuant to the terms of a divorce decree, later seek modification of the same. For such reason, we find that the trial court erred in holding thatTroxel, supra., was not applicable. Furthermore, we note that, as in Troxel, the issue in the case sub judice is not whether grandparent visitation is to be cut off entirely, but rather the extent of grandparent visitation.
 {¶ 47} Appellant's third assignment of error is, therefore, sustained.
 I {¶ 48} Appellant, in his first assignment of error, argues that R.C. 3109.051 is unconstitutional "in that it fails to require a trial court to afford the decision of a fit parent special weight" as required by Troxel, supra.
 {¶ 49} Upon our review of the record, we find that appellant did not raise the issue of the constitutionality of R.C. 3109.051
in the trial court. As stated by the Supreme Court of Ohio inState v. Awan (1986), 22 Ohio St.3d 120, 489 N.E.2d 277, syllabus:
 {¶ 50} "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal."
 {¶ 51} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 52} Appellant, in his second assignment of error, argues that the trial court erred by failing to give appellant's decision with respect to grandparent visitation special weight. We agree.
 {¶ 53} Based upon our review of the Magistrate's Decision and the Opinion of the trial court adopting the same, we find that the trial court failed to follow Troxel, supra., by failing to afford appellant's decision special weight with respect to grandparent visitation.[2]
 {¶ 54} Appellant's second assignment of error is sustained.
 ASSIGNMENTS OF ERROR CASE NO. 04 CA 0035 I {¶ 55} Appellant, in his first assignment of error, contends that the trial court erred in issuing orders on matters not currently before the court. Appellant specifically contends that the trial court, in its April 1, 2004, Judgment Entry issued after the January 8, 2004, hearing on the Davis appellees' motion for contempt, improperly ordered that visitation "shall be governed by the framework provided in Local Rule 19 as to times, notices, pick-ups and drop-offs . . ." and, by doing so, went beyond the scope of the contempt motion. We disagree.
 {¶ 56} The Magistrate, in his January 21, 2004, decision following the hearing on the motion for contempt, stated, in relevant part, as follows:
 {¶ 57} "If the Magistrate were to allocate fault for the problems that arose in the summer of 2003, he would pin it on the plaintiff. This would seem inconsistent with the failure to find him in contempt. The failure of the contempt is because it was not specifically stated that the third party defendants would pick the times. For that reason the Magistrate overrules the third party defendants' motion.
 {¶ 58} "The Magistrate finds however that corrective action must be taken to assure that this type of situation does not arise in the future. The December 5, 2003, judgment entry is much more specific as to times and in its reference to Local Rule 19. From this point forward, specifically for summer parenting times for the third party defendants, the notice provisions found in Local Rule 19 apply. If there are any other parenting times that are in question reference is made to Local Rule 19 for resolution unless specific provision is made in that judgment entry or any previous judgment entries or orders."
 {¶ 59} The trial court, in its April 1, 2004, Judgment Entry, stated, in relevant part, as follows: " The visitation/parenting times for the third party defendants shall be governed by the framework provided in Local Rule 19 as to times, notices, pick-ups and drop-offs . . ." Clearly, the trial court issued such order as a way of clarifying visitation based on evidence adduced at the hearing before the Magistrate that appellant was, as noted by the Davis appellees, taking "advantage of the lack of framework for his own advantage to deny the Grandparents the summer visitation times they should have had." Furthermore, the Davis appellees, in their motion for contempt against appellant, specifically had requested approval of their summer visitation schedule.
 {¶ 60} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 61} Appellant, in his second assignment of error, argues that the trial court erred in ordering appellant to pay court costs for the hearing on the motion for contempt filed by the Davis appellees since the trial court denied such motion. We disagree.
 {¶ 62} After the Davis appellees filed a motion for contempt against appellant, arguing that appellant should be found in contempt for violating the Magistrate's Order of May 21, 2003, by denying them visitation time, appellant filed a motion to dismiss the contempt motion. Appellant, in his motion, argued that the Magistrate's decision was stayed since objections had been filed.
 {¶ 63} The matter then came on for hearing before the Magistrate on January 8, 2004. As memorialized in a Magistrate's Decision filed on January 21, 2004, the Magistrate recommended that appellant's motion to dismiss be denied since the Magistrate's May 21, 2003, Order had never been appealed and, therefore, was a valid order. While the Magistrate further recommended that the motion for contempt against appellant be denied since "it was not specifically stated that the third party defendants [the Davis appellees] would pick the times [for visitation]", the Magistrate further indicated that if he were to allocate fault for the visitation problems that arose in the summer of 2003, he would pin the blame on appellant. In short, although recommending that the motion for contempt be denied, the Magistrate did not find appellant entirely blameless.
 {¶ 64} Based on the foregoing, appellant's second assignment of error is overruled.
 III, IV {¶ 65} Appellant, in his third and fourth assignments of error, maintains that the trial court erred in granting the Davis appellees' motion for approval of summer visitation for the summer of 2004 with allowing appellant to respond to the same and without a full hearing on such motion.
 {¶ 66} Since the Davis appellees have exercised all of their court ordered visitation for the summer of 2004, we concur with the Davis appellees that appellant's third and fourth assignments of error are moot.
 {¶ 67} Accordingly, the December 5, 2003 Judgment Entry of the Licking County Court of Common Pleas, Domestic Relations Division in Case No. 03CA00114 is affirmed, in part, and reversed and remanded, in part and the April 1, 2004 and April 8, 2004 Judgment Entries of the Licking County Court of Common Pleas, Domestic Relations Division in Case No. 04CA0035 are affirmed.
Edwards, J., Hoffman, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the December 5, 2003 Judgment Entry of the Licking County Court of Common Pleas, Domestic Relations Division in Case No. 03CA00114 is affirmed, in part, and reversed and remanded, in part and the April 1, 2004 and April 8, 2004 Judgment Entries of the Licking County Court of Common Pleas, Domestic Relations Division in Case No. 04CA0035 are affirmed. With respect to Case No. 03CA00114, costs are to be paid 33% by appellant and 67% by appellee. With respect to Case No. 04CA0035, costs are to be paid 100% by appellant.
[1] The Davis appellees were designated as residential custodians for the children for a large amount of the time while the divorce was pending.
[2] The Magistrate, in his June 5, 2003, Decision, indicated that he had considered the factors contained in R.C. 3109.051(D)(1)-(12). There is no evidence that the Magistrate considered R.C. 3109.051(D)(15), which deals with the wishes and concerns of the child's parents.